IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Keith A. Sims, #314569, | ) | C/A No.: 1:14-4661-JMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Robert Stevenson, Warden, Broad River | ) | |
| Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Keith A. Sims ("Petitioner") is an inmate at the Broad River Correctional Institution of the South Carolina Department of Corrections who filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 17, 18]. Petitioner filed a timely response on August 12, 2015, after obtaining an extension. [ECF Nos. 20, 24, 29, 39]. Petitioner also filed a pro se motion to amend the petition. [ECF No. 21]. The matter having been fully briefed, it is ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted, and Petitioner's motion to amend be denied.

I.    Factual and Procedural Background

The South Carolina Supreme Court summarized the facts of this case as follows:

---

[1] Petitioner was initially represented by counsel, but his attorney moved to withdraw without objection by Petitioner.

The body of Brian Anderson was found in a Newberry County pond on December 31, 2003. The body was chained to a pipe weighted down by two cement blocks. Anderson had been shot in the right eye. Marks on Anderson's body indicated he was dragged to the pond. Nearby, law enforcement agents found work gloves and packaging.

The next day, Anderson's blood-spattered car was located in the parking lot of a Columbia apartment complex. The pattern of blood stains indicated that someone in the front passenger's seat had shot Anderson while he was in the driver's seat. Anderson was last seen alive on December 30 at a party in a Columbia hotel.

Sims and Anderson were acquaintances. They left the party together around midnight in Anderson's car. Evidence pointed to Sims as the killer, and he was arrested and charged with murder. His subsequent statements to law enforcement contained several versions of his involvement in Anderson's death.[1]

During the investigation, law enforcement learned that Sims had enlisted the support of three individuals to help him dispose of Anderson's body, Sims's bloody clothes and the gun used to kill Anderson. Those three individuals were Natalie English (Sims's girlfriend), Derrick Ruff (Sims's friend), and Nikki Davis (Ruff's girlfriend). English, Ruff, and Davis were charged as accessories after-the-fact of murder.

Davis cooperated with law enforcement and led them to several pieces of critical evidence, including the gun that Sims used to kill Anderson. The information Davis provided also enabled law enforcement to recover several items that had belonged to Anderson; these items were found in a dumpster behind the church Sims's mother attends.

_____

[1] Sims's initial statement acknowledged that Anderson had "dropped him off" after the party, but denied any involvement in Anderson's death: "I ain't got no pistol . . . That's crazy. I didn't kill Brian." In a subsequent statement, Sims told law enforcement that he and Anderson left the party together around 1:00 a.m.; they stopped at McDonald's and a crack house before Anderson dropped off Sims. In a third statement, Sims continued to deny any involvement in Anderson's death. Sims eventually admitted to law enforcement that he shot Anderson, but contended Anderson had pulled a gun on him. At trial two years later, Sims admitted killing Anderson, who

was unarmed. Sims asserted self-defense as he testified he believed Anderson was reaching for a gun.

[ECF No. 18-4 at 141–42].

Petitioner was indicted by the Richland County Grand Jury during the February 2004 term of court for murder (2004-GS-40-1037). [ECF No. 18-5 at 18–19]. Attorneys Lanelle Durant and Stacy Owings represented Petitioner at a jury trial on March 20–24, 2006, before the Honorable G. Thomas Cooper, Jr., Circuit Court Judge.[2] [ECF No. 18-1 at 4 *et seq.*]. The jury found Petitioner guilty as charged [ECF No. 18-4 at 6–9], and Judge Cooper sentenced Petitioner to 40 years, *id.* at 19.

Petitioner appealed his conviction and sentence to the South Carolina Court of Appeals ("Court of Appeals") and was represented by Joseph L. Savitz, III, Esq., Chief Appellate Defender, of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. *Id.* at 21–29. Attorney Savitz filed a merits brief on October 22, 2007, raising the following issue:

> The trial judge committed reversible error by allowing a State's witness to relate that a non-testifying third-party told her "Keith had murdered somebody," since this evidence violated *South Carolina Evidence Rule 802*, the rule against hearsay.

*Id.* at 24. On April 17, 2008, the Court of Appeals filed a decision affirming the conviction. *Id.* at 48–63. On May 22, 2008, the Court of Appeals denied Petitioner's

---

[2] Although the trial transcript cover page lists the judge as the Honorable James Johnson, Circuit Court Judge, the heading on the South Carolina Court of Appeals' opinion affirming Petitioner's conviction lists G. Thomas Cooper, Jr. as the presiding judge. [ECF No. 18-4 at 48].

3

request for rehearing. [ECF Nos. 18-4 at 64–66; 18-7]. On August 12, 2008, Attorney

Savitz filed a petition for writ of certiorari, raising the following issue:

> Whether the trial judge committed reversible error by allowing a State's witness to testify that a non-testifying third-party told her "Keith had murdered somebody," since this evidence violated *Rule 802, SCRE*, the rule against hearsay.

 [ECF No. 18-4 at 74]. On March 19, 2009, the South Carolina Supreme Court granted

certiorari. *Id.* at 105. Attorney Savitz filed a brief, raising the following issue:

> The trial judge committed reversible error by allowing a State's witness to testify that a non-testifying third-party told her "Keith had murdered somebody," since this evidence violated *Rule 802, SCRE*, the rule against hearsay.

*Id.* at 109. On May 17, 2010, the South Carolina Supreme Court issued an order

affirming in result the Court of Appeals's decision affirming Petitioner's conviction. *Id.*

at 140–51. On June 24, 2010, the South Carolina Supreme Court denied Petitioner's

request for rehearing. *Id.* at 152–55. The remittitur was issued the same day. [ECF No.

18-8].

     On March 21, 2011, Petitioner filed an application for post-conviction relief

("PCR"), raising claims of ineffective assistance of trial counsel, ineffective assistance of

appellate counsel, and ineffective assistance of trial counsel/prosecutorial misconduct.

[ECF No. 18-4 at 157–61]. On August 14, 2012, a PCR evidentiary hearing was held

before the Honorable R. Knox McMahon, Circuit Court Judge, at which Petitioner and

his counsel, Tynika Claxton and Charlie Johnson, appeared. *Id.* at 168–231. On October

18, 2012, Judge McMahon filed an order of dismissal. [ECF No. 18-6].

On November 15, 2012, Petitioner filed a Rule 59(e), SCRCP, motion to alter or amend the order of dismissal [ECF No. 18-5 at 5–11], which Judge McMahon denied on February 13, 2013, *id.* at 16–17.

Petitioner timely filed a notice of appeal and was represented by Tristan Shaffer, Esq., who filed a *Johnson* [3] petition for writ of certiorari in the South Carolina Supreme Court and petitioned to be relieved as counsel. [ECF No. 18-13]. The petition raised the following issue:

> Was Petitioner denied his right to present a full and complete defense when the trial court suppressed evidence that the decedent was previously in a shoot-out and Petitioner attempted to use such evidence to support his claim of reasonable apprehension of fear?

*Id.* at 3.

On November 14, 2013, Petitioner filed a pro se brief in which he raised the following issues:

> Issue (A):  The PCR court erred in failing to find ineffective assistance of counsel and prosecutorial misconduct.

> Issue (B): The PCR court erred in failing to find counsel rendered ineffective assistance when counsel failed to object to testimony concerning Petitioner's invocation of constitutional rights.

---

[3] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal, furnish a copy of that brief to the defendant, and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

Issue (C): The PCR court erred in failing to find counsel rendered ineffective assistance when counsel failed to object to the introduction of ammunition later removed from evidence.

Issue (D):    The PCR court erred in failing to find counsel rendered ineffective assistance when counsel failed to object to improper vouching and pitting of witnesses in closing.

Issue (E): The PCR court erred in failing to find counsel rendered ineffective assistance when counsel failed to object to the improper jury charges on the inference of malice.

Issue (F): The Richland County court of general sessions lacked subject matter jurisdiction and personal jurisdiction.

[ECF Nos. 18-15 at 2].

On September 11, 2014, the South Carolina Supreme Court issued an order denying the petition for writ of certiorari and granting counsel's petition to be relieved. [ECF No. 18-16]. The remittitur was issued on September 29, 2014. [ECF No. 18-17].

Petitioner filed this petition for writ of habeas corpus on December 9, 2014. [ECF No. 1].

II.    Discussion

A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One:**    Due Process Violation and Inaffective Assistance of Counsel and unfair trial in allowing a state's witness to testify to a non-testifying 3rd party's hearsay statement.

Supporting Facts: A statement of a non-testifying witness was allowed to be introduced at trial by a witness which stated that the Petitioner said "I murdered somebody." This violated Petitioner's Due Process rights under the United States Constitution.

**Ground Two:**   Due Process Rights violation/inaffective assistance of appellate counsel for Petitioner being constitutionally deprived of the ability to put forth a complete defense and right to a fair trial.

Supporting Facts: Petitioner was not allowed to put forth a complete defense because he was not allowed to call Officer Scott McDonald to testify that the victim was known to possess firearms and, therefore Petitioner was in fear of his life. This testimony would have allowed the Petitioner to fully put forth a complete defense since the defense in this case is self defense. This failure prejudiced the Petitioner.

**Ground Three:**   Petitioner's due process rights were violated by ineffective assistance of counsel for failing to object to The State's closing argument which pitted witnesses against the defendant, vouched for them.

Supporting Facts: Trial counsel was ineffective for failing to object to the prosecutor's improper vouching for witnesses and improper pitting of witnesses. Solicitors' argument that Nicki Davis's testimony about Natalie English telling her Petitioner had "murdered somebody" was the truth and his statements about the credibility of Nicki Davis compared to the Petitioner creditability were objectionable. Petitioner's rights were violated by this failure.

**Ground Four:**   Prosecutorial Misconduct, defective indictment.

Supporting Facts: Petitioner claims that the indictment was obtained improperly and that the Grand Jury did not meet during the term of court that is stamped on the indictment.

**Ground Five:**   Ineffective assistance of counsel and due process violation for failing to object to the trial judge's erroneous admission of irrelevant evidence and failure to move for a mistrial after the irrelevant evidence was disallowed into evidence.

Supporting Facts: The prosecutor offered evidence of ammunition allegedly found at Petitioner's house which the trial judge initially allowed to be viewed by the jury but later disallowed its introduction. Trial counsel failed to object and move for a mistrial. Petitioner was prejudiced by this failure.

**Ground Six:**   Due Process violation and ineffective assistance of counsel for

7

failing to object to a burden shifting jury charge.

Supporting Facts: During the charge to the jury, the court charged an erroneous instruction on the inference of malice from the use of a deadly weapon. This erroneous and burden shifting jury charge was not objected to by the trial attorney. The erroneous and burden shifting jury charge prejudiced the Petitioner.

**Ground Seven:**    Due process violation and ineffective assistance of counsel for trial counsel failing to object to testimony on the Petitioner's invocation of his constitutional rights.

Supporting Facts: Investigator Eldon McGraw testified that on January 2, 2004 the Applicant stated the "he might need an attorney." Trial counsel failed to object to this testimony. Petitioner's due process rights were violated and he was prejudiced by this violation.

**Ground Eight:**    Due process violation and ineffective assistance of counsel for failing to object and move to dismiss the case for lack of subject matter jurisdiction and personal jurisdiction due to failure to offer factual evidence and expert testimony.

Supporting Facts:  In the discovery material, there is a report from the forensic pathologist which states that the death of the victim in this case occurred in Newberry County and not in Richland County. Trial counsel did not make the motion regarding subject matter and personal jurisdiction. This failure to raise this issue denied Petitioner due process, was ineffective assistance of counsel and prejudiced the Petitioner.

**Ground Nine:**    Due process violation and ineffective assistance of post conviction relief counsel for failing to pursue a claim of the ineffectiveness of appellate counsel for failure to appeal the issue of the self defense charge not going back with the jury and the state improperly impeached Petitioner's juvenile record.

Supporting Facts: The defense trial counsel had requested a self defense charge be recharged and the written charge go back to the jury with the Murder and Manslaughter charge when the jury had asked for further instruction. The State impeached Petitioner with his juvenile record and went beyond the scope during examination and appellate counsel did not raise these issues on appeal. Petitioner was

8

prejudiced by this failure.

[ECF No. 1 at 5–10, 16–19].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner

10

present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)     (i) there is an absence of available State corrective process; or
>          (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, et seq.; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854.  As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted," *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the South Carolina Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged

constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986), *superseded by statute on other grounds* (AEDPA).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the states courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show

15

an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's

16

high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

    D.    Analysis

        1.    Barred Claims

As an initial matter, Respondent argues Petitioner procedurally defaulted on his claims in Grounds One, Two, and Eight. [ECF No. 18 at 19–20, 22, 34]. In Ground One, Petitioner alleges the trial court violated his due process rights when the court permitted a state witness to testify to a non-testifying third party's hearsay statement. [ECF No. 1 at 5]. In Ground Two, Petitioner argues the trial court did not allow him to put forth a complete defense when the court did not allow him to call an officer to testify that the

victim was known to possess firearms. *Id.* at 7.  Because Grounds One and Two are challenges to evidentiary rulings by the trial court, and were not raised in Petitioner's direct appeal, these grounds were not fairly presented to the South Carolina appellate courts and are procedurally barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review). These grounds are also procedurally barred because they address state law errors. *Estelle v. McGuire*, 502 U.S. 62,  67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citations omitted).

In Ground Eight, Petitioner claims his trial counsel was ineffective when she failed to object to the trial court's subject matter and personal jurisdiction. [ECF No. 1 at 18].  Because Ground Eight was not raised in Petitioner's PCR appeal, this ground was not fairly presented to the South Carolina appellate courts and is procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 ; *Pruitt v. State*, 423 S.E.2d 127 (S.C. 1992) (holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review). Consequently, federal habeas review of Petitioner's claims in Grounds One, Two, and Eight are barred absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Matthews v. Evatt*, *supra*.

18

2.     Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of Grounds One, Two, and Eight. In all cases in which a state prisoner has defaulted his federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *See* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (holding in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez*, 906 F.2d at 1159 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"); *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or the defendant's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate any cause for procedurally defaulting on these grounds. Petitioner had a trial, a direct appeal, a PCR hearing, and a PCR appeal in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned

opportunities to preserve the issues.

Having failed to establish "cause," the court does not reach whether Petitioner was prejudiced. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995) ("We are mindful . . . that in *Engle* [*v. Isaac*, 456 U.S. 107, 134 n.43 (1982)], after finding that there was no cause for the default, the Supreme Court ended its inquiry, noting that because 'we conclude[d] that these respondents lacked cause for their default, we do not consider whether they also suffered actual prejudice.'"); *see also Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998) (same).

In the alternative, Petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* at 337. The court's review of the record does not support a showing of actual innocence.

During the trial, the solicitor presented the facts recited in the Factual Background section above and the jury determined Petitioner was guilty of murder. The record makes an assertion of actual innocence not credible. The undersigned finds Petitioner has failed to meet his burden of demonstrating actual innocence, and therefore, the procedural bar applies to his claims in Grounds One, Two, and Eight.

3.      Merits Review

a)      Ground Three

In Ground Three, Petitioner argues his counsel was ineffective for failing to object to the solicitor's closing argument in which the solicitor vouched for his witnesses and pitted these witnesses against Petitioner. [ECF No. 1 at 8]. Petitioner argues the solicitor's statements were unduly prejudicial because his entire case was based on his credibility as a witness, and he was not able to rebut the solicitor's improper pitting and vouching. [ECF No. 39 at 7].

During the PCR hearing, Petitioner testified his counsel did not object to the solicitor stating "no truer words were spoken in this case" in reference to a witness stating Petitioner murdered victim. [ECF No. 18-4 at 180, 195]. Petitioner stated he felt he "would have had a better outcome in [his] trial if [counsel] would have objected." *Id.* at  180.

When asked about the solicitor commenting on his witnesses' credibility during closing argument, trial counsel testified:

A:      Well, I think that's just part of his argument. I don't - -  I don't think you can say that he can't do that in a closing argument.

Q:      Okay and would you agree that kind of the - - that solicitors have pretty - - or anyone has pretty wide deference in what they can testify to ---

A:      Right

Q:      - - - in closing argument as long as it's based on the facts in evidence that were presented at trial and reasonable inferences that can be drawn from those facts?

A:    Correct. Yeah, they can't introduce new evidence, but to comment on what's been presented.

*Id.* at 216.

The PCR court denied the claim, explaining:

This Court finds counsel not ineffective in either regard. As set forth by counsel, a solicitor may argue in closing anything within the record and reasonable inferences that may be drawn there from. State v. New, 338 S.C. 313, 526 S.E.2d 237 (1999), State v. Copeland, 321 S.C. 318, 468 S.E.2d 620 (1996). Further, a solicitor may argue the State's version of the testimony presented and may comment on the weight to be accorded to such testimony. State v. Raffaldt, 318 S.C. 110, 456 S.E.2d 390 (1995). "Therefore, although the State cannot 'pit' witnesses during questioning, it may comment on the credibility of the witnesses in argument." Id. at 115, 456 S.E.2d 393. Based upon a review of the record, this Court finds counsel was objectively reasonable for not objecting to the statements as they were not objectionable and counsel did not want to risk bringing that portion of the argument back to the jury's attention.

Further, Applicant has failed to prove resulting prejudice from the alleged improper closing arguments as this Court finds no reasonable probability that the outcome of the trial would have been different had the argument been objected to and sustained.[7] To be entitled to a new trial for improper closing arguments, the test is whether "the Solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." State v. Hamilton, 344 S.C. 344, 362, 543 S.E.2d 586, 596 (2001). This Court finds the comments did not have such an effect on Applicant's trial.

_____

[7] Further, the trial court specifically instructed the jury that counsels' opening/closing statements were not evidence in the case for their consideration, thereby potentially curing any impropriety. (Trial Tr. p. 93, ll. 3-15.)

[ECF No. 18-6 at 18].

In examining claims pertaining to improper comments by a prosecutor, "[t]he

relevant question is whether the prosecutors' comments 'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). However, the *Darden* Court noted that "it is not enough that the remarks were undesirable or even universally condemned." *Id.* (internal quotation omitted). Having reviewed the record and considered the weight of the evidence and the extent of these comments, the court finds that the solicitor's comments did not render Petitioner's trial fundamentally unfair. Petitioner has failed to establish that there is a reasonable probability that the result of the proceeding would have been different if trial counsel had objected. *Strickland,* 466 U.S. at 694. Therefore, Petitioner cannot establish that trial counsel was constitutionally ineffective in failing to object during closing argument. Moreover, Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there were an error, that it was unreasonable. *See Williams v. Taylor,* 529 U.S. at 410. Based on the foregoing, the undersigned recommends that Respondent be granted summary judgment on Ground Three.

b)     Ground Four

In Ground Four, Petitioner alleges his indictment was obtained improperly because the grand jury did not meet during the term of court stamped on the indictment. [ECF No. 1 at 10]. Respondent argues Petitioner's Ground Four does not state a claim cognizable in federal habeas corpus because the allegations are not controlled or addressed by clearly established Supreme Court precedent. [ECF No. 18 at 26–28]. The undersigned agrees. State indictments and state court subject matter jurisdiction are matters of state law that are not cognizable in federal habeas corpus. *See Wright v.*

*Angelone*, 151 F.3d 151, 157 (4th Cir. 1998); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary"). Accordingly, the undersigned recommends that Respondent be granted summary judgment on Ground Four.

c)     Ground Five

Petitioner argues his counsel was ineffective for failing to object to the trial judge's erroneous admission of irrelevant evidence and failing to move for a mistrial after the irrelevant evidence was disallowed. [ECF No. 1 at 16].

Petitioner testified his counsel failed to offer a timely objection to ammunition introduced by the solicitor.   [ECF No. 18-4 at 198–99].   Petitioner stated counsel "originally objected after the -- the judge had come back and said that he errored by allowing that because it wasn't – it – it didn't have no relevancy to it."   *Id.* at 198. Petitioner testified counsel "should have objected to it at the first opportunity so the jury could have never heard of it or put a motion to suppress it." *Id.*

Trial counsel testified she objected when the solicitor offered the ammunition into evidence and the ammunition was admitted over her objection. *Id.* at 212–13. Counsel stated the judge later reconsidered his ruling and the items were removed from evidence, but counsel testified she could not recall if the judge gave a curative instruction. *Id.* at 213. When asked if she moved for a mistrial, counsel testified:

> I - - I did not think it was sufficient enough. I just didn't think it reached a level for that. . . . [Y]ou have to have significant reasons for mistrial.

24

*Id.* at 213–14.

In rejecting Petitioner's claim, the PCR court found:

This Court finds no deficiency, nor resulting prejudice, in this regard. Counsel was fully aware of the situation and made the decision not to bring the ammunition back to the jury's attention by requesting the court give a curative instruction. She timely objected to its initial introduction, which was the basis for the court's eventual suppression of the evidence. Further, the granting of motion for mistrial is an extreme measure that should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way. State v. Beckham, 334 S.C. 302, 513 S.E.2d 606 (1999). Mistrial should not be granted unless absolutely necessary; to receive mistrial, defendant must show error and resulting prejudice. State v. Council, 335 S.C. 1, 515 S.E.2d 508 (1999). Counsel specifically noted she did not see proper prejudice to request a mistrial. Counsel's strategic choice in this regard was not objectively unreasonable. See Whitehead, *supra*.

Further, this Court finds no resulting prejudice as Applicant has failed to prove any reasonable likelihood that either the trial court would have granted a mistrial motion if requested, or that, but for the introduction of the evidence, the outcome at trial likely would have been different. The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion amounting to an error of law. State v. Council, 335 S.C. 1, 515 S.E.2d 508 (1999). Although the decision is vested in the sound discretion of the trial court, a mistrial is proper only where it is dictated by "manifest necessity" or "the ends of public justice." This Court finds no such "necessity" from the introduction of the ammunition and, therefore, no reasonable likelihood the trial court would have granted such a motion had it been made. Further, there is no reasonable likelihood the outcome at trial would have been different had the ammunition been suppressed from the outset of trial.

[ECF No. 18-6 at 16–17].

In his response, Petitioner argues his trial counsel was ineffective for failing to ask for a curative instruction concerning the trial court's reversal of its ruling that the irrelevant ammunition was admissible. [ECF No. 39 at 12]. Petitioner argues this

25

evidence left the jury with the inference that he was a dangerous person who had many guns and therefore the intent to kill. *Id.*

The undersigned finds the PCR court reasonably found counsel was not ineffective, noting counsel's decision to not request a curative instruction or move for a mistrial were not objectively unreasonable. [ECF No. 18-6 at 16]. Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel if it is objectively reasonable under the circumstances. *Strickland v. Washington*; *Caprood v. State*, 525 S.E.2d 514 (S.C. 2000). Courts must be wary of second guessing counsel's trial tactics; and where counsel articulates a valid reason for employing such strategy, such conduct is not ineffective assistance of counsel if objectively reasonable under the circumstances. *Strickland v. Washington*; *Whitehead v. State*, 417 S.E.2d 529 (S.C. 1992).

Further, Petitioner cannot satisfy the *Strickland* test. He has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding his ineffective assistance of counsel claims. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of these issues. Petitioner cannot establish that he is entitled to federal habeas relief on this claim under 28 U.S.C. § 2254(d), and the undersigned recommends that Ground Five be denied and dismissed with prejudice.

### d)    Ground Six

Petitioner claims his counsel was ineffective for failing to object to a burden shifting jury charge. [ECF No. 1 at 17]. Petitioner testified the trial court unconstitutionally shifted the burden of proof in charging the jury that malice may be inferred from the use of a deadly weapon. [ECF No. 18-4 at 185–86]. Petitioner stated:

> [T]he Supreme Court said that this [jury charge] is confusing and prejudicial, that the jury charge has no - - a jury charge is no place for proposed ambiguity. Quoting *State v. Leeville*, it says it holds that the jury should not be charged that matters may be inferred from the use of a deadly weapon.

*Id.* at 185. When asked whether he was arguing about case law decided after his trial, Petitioner testified:

> [T]hese are old court laws. They was - - they was talking about -- they said back then you can't charge that, but it was up on the permissible inference charging concerning the use of a deadly weapon. They states that that's still correct as law if the only issue present to the jury is whether the defendant has committed murder, but not when self-defense has been charged. Then you can't take the language that may appear to incorporate a qualification in disjunctive term that maintains the use of a deadly weapon infers as a stand alone . . . independent statement of law.

*Id.* at 185–86.

Counsel testified the *Belcher*[5] case, which stood for the proposition that a jury may not be charged that malice can be inferred from the use of a weapon if there is any indication of self-defense in the case, was not the law at the time of Petitioner's trial. *Id.* at 214–15. Counsel stated the *Belcher* holding does not apply retroactively in PCR actions. *Id.* at 215.

---

[5] *State v. Belcher*, 685 S.E.2d 802 (2009).

The PCR court discussed South Carolina law regarding an implied malice jury charge at the time Petitioner was tried and found that:

> The charge given at the time of Applicant's trial was the sanctioned charge on the law as it stood in South Carolina under State v. Elmore. Therefore, it was not objectionable and counsel was not ineffective for failing to object. Further, attorneys are not required "to anticipate or discover changes in the law, or facts which did not exist, at the time of the trial. Thornes v. State, 310 S.C. 306, 310, 426 S.E.2d 764, 765 (1993); see also Robinson v. State, 308 S.C. 74, 78, 417 S.E.2d 88, 91 (1992) (finding counsel not ineffective for failing to assert defense not yet recognized by the Court). For those reasons, this Court finds the allegation to be without merit.

[ECF No. 18-6 at 20].

Petitioner argues the PCR court erred in not finding trial counsel was ineffective in failing to object to the trial court's jury instruction on malice. [ECF No. 39 at 13]. Petitioner alleges his argument "in no way relates to State v. Belcher." *Id.* Petitioner argues he is solely relying on *Sandstrom v. Montana*, 442 U.S. 510 (1979). *Id.*

Petitioner has failed to overcome the doubly-deferential standard of review accorded the state court's determination of this issue of ineffective assistance of counsel under *Harrington*. As noted by the PCR court, at the time of Petitioner's conviction, the law in South Carolina was that malice could be inferred from the use of a deadly weapon. Although Petitioner cites to *Sandstrom*, Petitioner does not offer any argument as to how the *Sandstrom* case supports his claim that the court's inferred malice charge was unconstitutional at the time Petitioner was tried. Because Petitioner's direct appeal was finalized in October 22, 2007, the rule announced in *Belche*r in 2009 is inapplicable to Petitioner's case. *See Belcher*, 685 S.E.2d at 810 (holding that the *Belcher* decision

would not apply to convictions challenged on post-conviction relief). Accordingly, Petitioner has not shown that the state court's analysis of this issue misapplied clearly established federal law or, even if there was an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Accordingly, Petitioner is not entitled to federal habeas relief on this claim, and the undersigned recommends that Respondent be granted summary judgment on Petitioner's Ground Six.

### e)    Ground Seven

Petitioner alleges his counsel was ineffective for failing to object to testimony on the Petitioner's invocation of his constitutional rights. [ECF No. 1 at 18]. Petitioner testified his counsel should have objected when Investigator McCraw testified Petitioner stated "he might need an attorney" while being questioned about the circumstances surrounding victim's death. [ECF No. 18-4 at 189–90]. Petitioner argues this statement showed he was invoking his right to remain silent. *Id.* at 190.

Counsel testified she could not give a reason why she did not object to McCraw's testimony that Petitioner became agitated and nervous and said he may need an attorney when asked if he killed victim. *Id.* at 210–11. Counsel stated:

> In my opinion, I do not think that hurt Keith. He wanted to testify. We knew he was going to testify and we knew he was going to say he had killed him so I really did not think that was prejudicial to him.

*Id.* at 212.

In denying Petitioner's claim, the PCR court found "counsel's decision not to object to McCraw's testimony was objectively reasonable based on the trial strategy under which [Petitioner] was operating." [ECF No. 18-6 at 11]. The PCR court noted

McCraw's testimony that Petitioner was paralyzed with panic and fear bolstered "the very heart of [Petitioner's] defense theory" that Petitioner acted under extreme distress without malicious intent or ill will. *Id.* at 12. The PCR court explained:

> McCraw's testimony only went to show Applicant was nervous that he had killed a person, a reaction the jury could reasonably believe to be expected after such an incident regardless of the basis for the killing. The testimony about his uneasiness and insinuated unwillingness to talk about it did nothing to damage Applicant's case. In fact, as stated above, this Court finds it more likely the testimony *bolstered* Applicant's defense than impeded it, as McCraw's testimony showed Applicant was not a calculated, unemotional killer, but rather a scared individual who reacted out of fear for his life. Therefore, this Court finds no reasonable probability that the outcome of the trial would have been different had this testimony been objected to and suppressed.

*Id.* at 13. In addressing Petitioner's argument that McCraw's testimony showed he was invoking his right to silence, the PCR court found:

> McCraw's testimony as complained of was the one and only time the Applicant's invocation of his rights to silence/counsel were mentioned during the course of the trial, and the solicitor never again mentioned the comment[6]; the solicitor at no point tied Applicant's invocation of rights to an insinuation of guilt; Applicant's statement was entirely implausible based on the testimony and evidence introduced at trial, which included Applicant's own acknowledgment that his first three statements were lies; and the evidence that Applicant had shot and killed Victim was overwhelming. In fact, it appears the testimony regarding Applicant's alleged invocation of his rights to silence/counsel was more pointed towards bolstering the credibility of Applicant's subsequent confession, as his invocation of constitutional rights at the January 2, 2004, interview only proved his knowledge of the ability to invoke such rights during his January 22, 2004, confession. Additionally, McCraw's testimony served to challenge testimony previously elicited by counsel attempting to show Applicant cooperated by voluntarily speaking to law enforcement. (Trial Tr. p. 281, ll. 2 -11). For all of the reasons set forth above, this Court finds counsel was not ineffective in this regard.

_____

[6] Counsel did impeach Applicant's version of the facts throughout trial by pointing to his failure to initially tell law enforcement in his first three

statements that he had acted in self-defense; however, only Applicant's prior account of the night was used from his January 2, 2004, statement for this purpose and his invocation of the right was never mentioned to call the credibility of Applicant's January 2, 2004, statement into question.

*Id.* at 14.

In response to summary judgment, Petitioner argues his counsel's failure to object to McCraw's testimony "allowed the jury to infer Petitioner had something to hide by telling McCraw he need[ed] to talk to a lawyer during the interview." [ECF No. 39 at 15].

The undersigned finds the PCR court reasonably found counsel's decision not to object to McCraw's statement was reasonable and a valid trial strategy because the statement bolstered Petitioner's defense theory that he was traumatized and shot victim out of fear for his life. *Id.* Where trial counsel articulates a valid reason for employing certain trial strategy, such conduct should not be deemed ineffective assistance of counsel if it is objectively reasonable under the circumstances. *Strickland v. Washington*; *Caprood v. State*, 525 S.E.2d 514. Courts must be wary of second guessing counsel's trial tactics; and where counsel articulates a valid reason for employing such strategy, such conduct is not ineffective assistance of counsel if objectively reasonable under the circumstances. *Strickland v. Washington*; *Whitehead v. State*, 417 S.E.2d 529.

Petitioner has also failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this ineffective assistance of counsel claim. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination given the evidence and record before it. Therefore, Petitioner has failed to overcome the deferential standard of review

31

accorded the state PCR court's determination of these issues. Petitioner cannot establish that he is entitled to federal habeas relief on this claim under 28 U.S.C. § 2254(d), and the undersigned recommends that Ground Seven be denied and dismissed with prejudice.

f)    Ground Nine

Petitioner alleges his PCR counsel was ineffective "for failing to pursue a claim of the ineffectiveness of appellate counsel." [ECF No. 1 at 19]. Petitioner argues his appellate counsel failed to appeal the trial judge not sending a self-defense charge back with the jury, and the state improperly impeaching Petitioner with his juvenile record. *Id.* Alleged infirmities in a state post-conviction action are not matters that may be addressed in federal habeas actions as a free-standing ground. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) ("[C]laims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). The federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the Petitioner's collateral proceeding does not enter into the habeas calculations. 28 U.S.C. 2254(i); *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004); *see also Bell-Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas application.") (internal citations, quotation marks, and alteration omitted). Accordingly, the undersigned recommends that Petitioner's Ground Nine be denied and dismissed with prejudice.

E.     Motion to Amend

Petitioner filed a pro se motion to amend Grounds Four and Nine of his habeas petition. [ECF No. 21]. Leave to amend a pleading should be denied when the amendment would cause undue delay, when it would be prejudicial to the opposing party, when there has been bad faith on the part of the moving party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986).  Petitioner's amendment to Ground Four does not add additional legal argument or facts to the claim presently before the court, and the undersigned recommends that the motion to amend be denied as moot. Petitioner's amendment to Ground Nine attempts to add additional facts concerning: (a) the trial court's rulings during jury deliberations, and (b) his trial counsel's failure to offer expert testimony concerning his mental state. [ECF No.  21]. Petitioner's request to add these additional facts would be futile, as these state law claims are not cognizable in federal habeas corpus, nor were they presented to or ruled on by the PCR court. *See Estelle v. McGuire*, 502 U.S. at 67–68; *Pruitt*, 423 S.E.2d 127. Accordingly, the court recommends that Petitioner's motion to amend [ECF No. 21] be denied as futile.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 17] be granted and the petition be dismissed with prejudice. The undersigned also recommends that Petitioner's motion to amend [ECF No. 21] be denied.

IT IS SO RECOMMENDED.


*Shiva V. Hodges*

November 30, 2015                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).